IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BOOTH T. JAMES,<br><br>Plaintiff,<br><br>vs.<br><br>MONTGOMERY REGIONAL AIRPORT AUTHORITY, et. al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 2:04cv1122-T<br>WO |

**ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the court on the Defendants' Motion for Summary Judgment (Doc. # 4). On December 15, 2004, Defendants filed this motion as a Motion to Dismiss (Doc. # 4), and the court converted the Motion into a Motion for Summary Judgment on December 28, 2004 (Doc. # 6) in order to consider evidence attached to the Motion. Plaintiff filed a Response on January 14, 2005. Defendants filed a Reply on January 27, 2005. This court requested additional briefing on February 23, 2005, and the parties complied with that Order.

Plaintiff Booth T. James ("James") filed his Complaint on November 19, 2004 alleging a violation of 42 U.S.C. § 2000, et seq. ("Title VII"), arising from the failure of the Montgomery Regional Airport Authority ("the Airport") to promote him to Airport Police Sergeant. He is suing the Airport as well as Airport Police Chief Joseph James ("Chief James"), Airport Executive Director Phil Perry, and Airport Assistant Director Gil Wilson in their individual and official capacities, alleging that he was forced to work in a racially hostile work environment and that his non-selection for promotion was the product of disparate treatment based upon his race. Defendants

seek summary judgment on all claims. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

For reasons to be discussed, the court concludes that the Defendants' Motion for Summary Judgment is due to be granted.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there

is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc).

## III. FACTS

The parties' submissions establish the following facts, taken in the light most favorable to the non-movant:

James is an African American man employed as an Airport Police Corporal in charge of the third shift at the Airport. In September 2004, Chief James promoted James's co-worker, J.R. Sewell, a Caucasian man, from the position of Airport Police Corporal to the position of Airport Police Sergeant without posting the position. When James learned that Sewell had been promoted, he attempted to apply for the Airport Police Sergeant job as well, but Sewell remained in the position.

## IV. DISCUSSION

### A. Title VII Claims Against Natural Persons

James alleges claims against Chief James, Executive Director Perry, and Assistant Director Wilson in both their individual and official capacities.

Defendants argue that the claims against the Airport employees in their individual capacities should be dismissed, since "[i]ndividual capacity suits under Title VII are . . . inappropriate." Busby

v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). The court agrees that "[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." Id. Therefore, summary judgment should be granted in favor of Chief James, Executive Director Perry, and Assistant Director Wilson on all claims against these parties in their individual capacities.

James also brings suit against these individuals in their official capacities. "There no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (finding that "to keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury"). Therefore, summary judgment should be granted in favor of Chief James, Executive Director Perry, and Assistant Director Wilson on all claims against these parties in their official capacities.

B. Title VII Claims Against the Airport

1. Disparate Treatment

When proving a case of disparate treatment, the plaintiff bears the burden of showing that the employer intentionally discriminated against him based on his race. Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. Id. at 802. After the plaintiff has established a prima facie case of discrimination, the employer bears the burden of producing a legitimate non-discriminatory reason for its employment action. Texas

Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). The plaintiff then must demonstrate that the proffered reason was a pretext for the employer's intentional discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256; Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 522 U.S. 1045 (1998). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

"The plaintiff must establish a prima facie case, which a plaintiff establishes in a failure to promote case by showing that: (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected; and (4) other equally or less qualified employees who were not members of the protected class were promoted." Walker v. Mortham, 158 F.3d 1177, 1186-7 (1998).

Taking the facts in the light most favorable to James, he has succeeded in establishing a prima facie case of discrimination. James is a member of a protected class because he is African American. He was considered for the promotion, he was qualified (taking the facts in the light most favorable to James), and yet he was not promoted into the position.

Although James did not officially apply for the promotion, the Eleventh Circuit has held that "the plaintiff was not required to ask specifically for that job when he did not know about it and where there was no formal mechanism for expressing his interest." Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th. Cir. 1984). Since the position was never posted, there is no need

for James to establish as part of his prima facie case that he formally applied for the promotion while the job was available.

Taking the facts in the light most favorable to James, he demonstrates that he meets the minimum qualifications for the Airport Police Sergeant position. The job description for Airport Police Sergeant states that it requires, *inter alia*, "a minimum of two (2) years experience with demonstrated supervisory skills in the position of Police Corporal." Pl. Compl., Exh 5, 2. While James had only sixteen months' experience as an Airport Police Corporal, he had about five additional years' experience as a Police Corporal and some experience as a Police Sergeant at the Montgomery County Police Department. Pl. Compl., EEOC Charge, 4, Pl. Compl. Exh. 6, 7. Thus, James had the required minimum experience to apply for the position according to the plain text of the job description.[1]

The Airport argues that the Airport Police Sergeant job description should be interpreted, and is interpreted as a matter of common business practice at the Airport, to require two years' experience as an ***Airport*** Police Corporal, not just a Police Corporal. Def. Exh. 2, Aff. Barbara Montoya, 2-3. The job description, however, does not state the requirements as the Airport suggests. Instead, the job description labels the position as "Airport Police Sergeant," but indicates that the position requires two years' experience as a Police Corporal, not an ***Airport*** Police Corporal. Pl. Compl., Exh. 5. Taking the evidence in the light most favorable to James, this court interprets the

---

[1]James also points out that the Montgomery City County Personnel Board certified that he was qualified to apply for the position of Airport Police Chief. Pl. Resp. To Supp. Submission Against Summ. J., 9-11. While this position carries a higher rank, it has different requirements which do not include two years as a Police Corporal. Therefore, it is possible that he could be qualified for the Airport Police Chief position, but not for the Airport Police Sergeant position.

job description according to its plain meaning and finds that a jury could determine that James has demonstrated that he met the minimum qualifications for purposes of this motion. Neither party disputes that Sewell was also qualified for the promotion.

Since James has established a prima facie case, the Airport must produce a legitimate non-discriminatory reason for James's non-selection. See Burdine, 450 U.S. at 256. The Airport meets this burden by explaining that it considered James, but did not hire him because the Airport believed James was unqualified, and because Chief James thought Sewell had a better temperament for the position. The Airport provides evidence that it believed that the Airport Police Sergeant position required two years' experience as an Airport Police Corporal, and proceeded in accordance with that belief. Def. Exh. 2, Aff. Barbara Montoya. When the Airport Police Sergeant position became available, Chief James checked with Barbara Montoya, the Director of the Montgomery City and County Personnel Board, who confirmed that the position required two years' experience as an Airport Police Corporal. Def. Mot. To Dismiss, Exh. 2. Montoya reviewed the qualifications of all three Airport Police Corporals and determined that only Sewell had two years' experience as an Airport Police Corporal; therefore, both Montoya and the Airport believed that Sewell was the only candidate eligible for promotion to Airport Police Sergeant. Id. The court finds that the Airport has met its burden to produce a legitimate non-discriminatory reason for its non-selection of James and promotion of Sewell.

Next, James must demonstrate that the Airport's proferred reason is a pretext for intentional discrimination. Burdine, 450 U.S. at 256. James must "cast doubt on the defendant's proffered nondiscriminatory reasons, sufficient to allow a reasonable factfinder to determine that defendant's proffered 'legitimate reasons were not what actually motivated its conduct,'" and that the Airport's

decision was the product of intentional racial discrimination instead. Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001) citing Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted).

James argues that he was qualified for the position, and the Airport should have known he was qualified. James's personnel file contains evidence that he had been a Police Corporal for more than two years at the Montgomery Police Department and otherwise met the minimum qualifications for the Airport Police Sergeant position. Pl. Compl. Exh. 6, 7.

However, the court's inquiry is limited to the question of whether the Airport *believed* that James was not qualified and, if so, whether this belief was the reason behind James's non-selection. Elrod v. Sears, Roebuck and Co., 939 F. 2d 1466, 1470 (11th Cir. 1991) (citations omitted). Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. . . . [N]o matter how mistaken the firm's managers . . . our inquiry is limited to whether the employer gave an honest explanation of its behavior." Id. (citations omitted). "[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory." Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323 n. 4 (11th Cir. 1982); see also Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir.1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated § 1981."). James shows that *he* believed he was qualified, and he has raised a question of fact as to whether he was qualified; however, James does not provide evidence from which a jury could determine that the Airport believed he was qualified to be the Airport Police Sergeant. Pl.

Compl., 9, 10. Pl. Resp. To Summ. J., 3. At best, James makes conclusory allegations that the Airport did not contact the Personnel Board, but these allegations lack evidentiary support. Id. Even if such evidence were admissible, James does not provide enough detail to show that he spoke to someone at the Board who was likely to know about Sewell's promotion and, therefore, he fails to raise a triable issue of fact.[2]

Even if the Airport believed that James met the minimum qualifications, James still fails to raise a triable issue of fact because he was not substantially more qualified than Sewell. The Eleventh Circuit standard for addressing relative qualifications for promotion requires that James prove that he was "substantially more qualified than the person promoted" in order to establish pretext. See Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001); Lee v. GTE Fla., 226 F.3d 1249, 1253-54 (11th Cir. 2000) ("[D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." (quoting Deines v. Tex. Dept. of Protective & Regulatory Servs., 164 F.3d 277, 280 (5th Cir. 1999)).

Here, James alleges that Chief James told James that "he wished Sergeant Sewell's shift was organized and ran [sic] just like third shift," which was the shift that James supervised as an Airport Police Corporal; James also argues that Chief James complained to him that Sewell often jumped the chain of command by bypassing Chief James and going to the Executive Director and Assistant Director instead of the Chief. Pl. Resp. To Evid. Submission, 5-6. These conclusory statements are not supported by admissible evidence in an affidavit or otherwise, and they lack detail and context:

---

[2]James was advised of the requirements for responding to a motion for summary judgment including, specifically, the need to use sworn affidavits or other evidence authorized by Rule 56(e). See Doc. 6, p. 2.

the court does not know when or where the statements were made. This court "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed R. Civ. P. 56(e). James must instead "set forth specific facts showing that there is a genuine issue for trial." Id. James also fails to address the fact that Sewell had three more years of experience as an Airport Police Corporal than James did, or the fact that Chief James believed that Sewell had the best temperament for the job. Suppl. Submission in Support of Summ. J., Aff. Joseph James, 1-3. James's statements do not provide sufficient evidence to allow a jury to find that he was substantially more qualified than Sewell.

Moreover, James fails to provide any evidence that James's non-selection had anything to do with his race. On the contrary, James himself says that the choices were made due to the existence of a "good old boy network," and that "also, there are currently Black Supervisors who benefited from this illegal process." Pl. Resp. To Def. Mot. Summ J., 2. Chief James also stated that Sewell's selection had nothing to do with either Sewell's race or James's race. Def. Suppl. Submission in Support of Summ. J., Aff. Joseph James. In fact, the Airport Police Sergeant position opened in the first place because Chief James promoted the former Airport Police Sergeant, an African American man, to Airport Police Lieutenant. Id.

Since James fails to rebut the Airport's legitimate non-discriminatory reasons for his non-selection for the Airport Police Sergeant position, summary judgment in favor of the Airport is due to be granted.

2. Hostile Work Environment

It is unclear from James's Complaint whether or not James alleges a claim of hostile work environment. Because of James's *pro se* status, the court will address this potential claim. A claim

of hostile work environment requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 178, 21 (1993) (quotations omitted).

To prove a prima facie case of hostile work environment harassment based on race the plaintiff must show that: "(1) he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); see also Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). Courts are "directed . . . to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances.'" Id. (quoting Harris, 510 U.S. at 17, 21-22). The harassment must be both subjectively severe and objectively severe from the perspective of a reasonable person in the plaintiff's position considering all the circumstances. Mendoza, 195 F.3d at 1246 CITE. Factors that can be considered include "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

James is a member of a protected class as an African American. He alleges in unsworn testimony that he was subject to a range of unwelcome conduct, but none of these allegations were

submitted in admissible form. Therefore, this court is without evidence to assess any claim of hostile work environment.[3]

Even if his evidence were submitted in admissible form, James's claim would still fail. James alleges in his Complaint that he has experienced unspecified physical threats, unidentified false accusations, and bullying from the Airport Fire Chief. Pl. Compl. 6-7; Pl. Resp. Evidentiary Submission Against Summ J., 2. James also had difficulty obtaining job descriptions from his supervisor, and he felt that the supervisor was trying to discredit him by scheduling a meeting, failing to attend the meeting, and blaming James for the schedule mix-up. Pl. Compl. 6-7. James also references an occasion when a white officer showed him a picture of a dead body and told him to "look at his relative." Pl. Resp. Def. Mot. Summ. J., 4, Pl. Compl. 6, 7. Finally, he alleges that "they," most likely James's supervisors, laughed or got angry when he brought racial problems in the workplace to their attention. Id.

James himself indicates that almost all of the conduct in question is motivated not by racial animus, but by the conspiracy of "a good old boy system" in which supervisors promote people who agree with them rather than using established procedures. Pl. Resp To Evidentiary Submission, 12-13. James alleges "there are currently Black Police Officers who have benefited [sic] from this illegal process" including Ernest William, the African American officer promoted from Airport Police Sergeant to Airport Police Lieutenant. Pl. Opp. To Summ. J., 2; Pl. Resp. To Evidentiary Submission, 12.

---

[3]Again, James was advised of the requirements for responding to a motion for summary judgment including, specifically, the need to use sworn affidavits or other evidence authorized by Rule 56(e). See Doc. 6, p. 2.

Moreover, James does not produce any evidence to show that the acts were severe enough to create an environment that affected a term or condition of employment. As the Supreme Court explained: "[I]n order to be actionable under the statute, a[n] . . . objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787-88. James fails to provide specific evidence about the frequency and severity of any incidents; therefore, he does not establish that the conduct was severe and pervasive.

Since James fails to allege facts sufficient to establish that James was harassed based upon his race, even if the allegations he submitted to support his claim of hostile work environment were admissible, his claim fails.

Therefore, summary judgment is due to be granted in the Defendants' favor as to any claim of hostile work environment.

## V. CONCLUSION

Accordingly, for the reasons discussed above, it is the RECOMMENDATION of the Magistrate Judge that summary judgment be GRANTED in favor of all Defendants as to all claims.

Additionally, it is ORDERED that:

1. Plaintiff's motion to compel (Doc. # 27), filed July 31, 2005 is DENIED as moot. The discovery at issue was requested after the date on which the summary judgment motion was fully submitted in this case. In addition, plaintiff's discovery requests are untimely, as they were not served within the time required for discovery to be completed (on or before May 23, 2005), as mandated by the court's January 20, 2005 scheduling order. No motion under Rule 56(f) has been filed in this case.

2. Defendants' motion to strike (Doc. # 31), filed August 25, 2005 is DENIED as moot.

3. The parties shall file any objections to this Recommendation on or before September 28, 2005. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Secs., Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 15th day of September, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE